IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 12 CR 697 |
| | ) | |
| ANTWAN JONES | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On March 5, 2014, a grand jury returned a thirteen-count superseding indictment[1] against

Defendant Antwan Jones and his two co-defendants[2]. (Dkt. No. 65.) After a seven-day trial, a

jury convicted Jones of all nine charged counts. (Dkt. No. 134.) Jones, through his attorneys at

the time, filed a motion for a judgment of acquittal or in the alternative a new trial alleging

various trial errors and arguing that insufficient evidence existed to support the guilty verdict.

(*See* Dkt. No. 179.) The Court denied the motion in its entirety, holding that there was abundant

evidence to support the jury's verdict, that the allegedly new evidence was immaterial to Jones's

conviction, and that Jones had failed to substantiate his arguments regarding any trial error. (*See*

Dkt. No. 229.) As they prepared for sentencing, however, his attorneys informed the Court that

Jones no longer wanted them to represent him and he sought to proceed pro se. His attorneys

---

[1] The Superseding Indictment alleged that Jones conspired to possess with the intent to distribute and to distribute controlled substances in violation of 21 U.S.C. § 846 (Count One); distributed controlled substances in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Six, & Nine); possessed with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (Count Four); used a communication facility in furtherance of the underlying conspiracy in violation of 21 U.S.C. § 843(b) (Counts Five & Seven); attempted to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Count Ten), and possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Eleven). (*Id.*)
[2] Jones's co-defendants were James Jones and Calvin Nelson. For convenience, the Court refers to James Jones as "James" throughout this opinion.

were ordered to serve as standby counsel and Jones then began to prepare his own motions for the Court because he was dissatisfied with those that had been filed. The Court permitted Jones to file additional motions pro se challenging his conviction.. (Dkt. No. 235.) Since then and over the course of nearly a year, Jones has filed six motions to vacate his conviction or to request a new trial. (*See* Dkt. Nos. 236, 238, 239, 240, 243, 264.)[3] The Court denies all of the motions in their entirety because there was more than sufficient evidence to support the jury's verdict and the Court's previous rulings were supported by the facts and the law.

## LEGAL STANDARD

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction against a defendant. *See* Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to convict him. *See United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (citing *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). Once convicted, the Court reviews the evidence presented to the jury in the light most favorable to the Government and makes all reasonable inferences in the Government's favor. *See United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) (citing *United States v. Larkins*, 83 F.3d 162, 165 (7th Cir. 1996)). The Court may overturn the jury's guilty verdict "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *United States v. Stevenson*, 680 F.3d 854, 855-56 (7th Cir. 2012). The jury must weigh the evidence and assess the witnesses' credibility, and courts do not "second-guess the jury's assessment of the evidence." *See United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008).

---

[3] Jones also filed, without leave of Court, supplements to two of his motions. (*See* Dkt. No. 248 (including supplements to Dkt. Nos. 239 and 240).) The Court addresses the arguments presented in these supplements as part of its consideration of the underlying motions.

Alternatively, a court may vacate a judgment and grant a new trial upon the defendant's motion "if the interest of justice so requires." *See* Fed. R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). Unlike a motion for acquittal, the Court need not view the evidence in the light most favorable to the Government. *See United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). Rather, "a defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006); *see also United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12 (2005). Rule 33 motions are generally disfavored and courts should only grant them in "the most 'extreme cases.'" *See United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States V. Morales*, 902 F.2d 604, 605 (7th Cir. 1990); *see also United States v. Kamel*, 965 F.2d 484, 490 n.7 (7th Cir. 1992). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citations omitted).

Finally, many of Jones's contentions are rehashed versions of arguments the Court has already addressed and rejected. As such, the Court assesses those contentions under a motion to reconsider standard. Although not specifically provided for by rule or statute, motions to reconsider are accepted in the criminal context. *See United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1442 (2015). A movant's mere disagreement with a Court's prior conclusion is not a ground for reconsideration. *See United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) ("motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits"); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007) (motions for reconsideration are extraordinary in nature and are not

appropriate vehicles for relitigating previously rejected arguments). Rather, motions for reconsideration are appropriate "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

## DISCUSSION

I.     **Motion for Post Trial Acquittal or New Trial related to Count I (Dkt. No. 236)**

In his first motion, Jones presents numerous arguments claiming that he is entitled to a judgment of acquittal or alternatively a new trial because of insufficiencies in the Government's evidence related to his conviction for conspiracy under Count I.

First, Jones contends that Calvin Nelson, a co-defendant who cooperated with the Government, provided testimony that described "physically impossible circumstances."[4] (Dkt. No. 236 at 1.) Specifically, Jones argues that Nelson's testimony during trial regarding the amount and type of drugs at issue was both inconsistent with his previous statements and that his answers were vague and uncorroborated. (*See id.* at 7-11.) However, the Court has already held that Nelson's testimony was credible, that his demeanor was calm during his testimony, and that even if there were concerns with Nelson's testimony, reversal on that ground is inappropriate. (*See* Dkt. No. 229 at 6.) Nothing in Jones's current briefing, effectively a motion to reconsider, alters the Court's findings. Further, despite his representations that Nelson's testimony described "physically impossible" circumstances and thus warrant relief, Jones's arguments only point out inconsistencies in Nelson's testimony at trial that Jones explicitly admits were raised and analyzed during cross-examination. (*See* Dkt. No. 236 at 7-8 (noting multiple instances of

---

[4] Jones challenges Nelson's testimony throughout his post-trial motions. (*See* Dkt. No. 255 at 10 (Government's consolidated Response noting various challenges).) Although the Court already addressed many of these contentions in its prior Order, to the extent that Jones raises new challenges, the Court addresses each in turn.

alleged discrepancies between Nelson's direct and cross examination testimony).)  As such, the jury already heard argument regarding any discrepancies and nevertheless convicted Jones. Finally, given that Nelson's testimony provided evidence regarding the amount of cocaine and cocaine base that Jones distributed, *see* Dkt. No. 229 at 6 n. 4, the record cannot be considered "devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt" as Jones argues.  *Jones*, 713 F.3d at 340 (quoting *Stevenson*, 680 F.3d at 855-56).

Jones next contends that the Court erred by giving the jury instruction that the Government did not need to prove the specific drug quantity alleged in the Indictment.  (Dkt. No. 236 at 11-14.)  Citing to *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Jones argues that the Court should have instructed the jury to make individualized findings regarding the type and quantity of the drugs involved in the conspiracy and further that Jones knew about the specific type and quantity of the drugs.  However, as the Court explained during the jury instruction conference, the Government need not prove that Jones knew the specific drug quantity or type, but only that his offense involved certain types and quantities of narcotics.  *See United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) ("Furthermore, all that § 841(b) requires is that the offense involve certain types and quantities, not that the defendant *know* the type and quantity. Accordingly, a defendant may be convicted under § 841(a)(1) even if he does not know the type or quantity of the controlled substance.") (emphasis in original); (*see also* Dkt. No. 136 at 32 (jury instruction consistent with law).)  Moreover, consistent with *Alleyne*, the jurors were required to and did in fact make individualized findings regarding the type and quantity of the drugs on the verdict form.  (*See* Dkt. No. 136 at 58-59, 66.)  As such, the jury instructions were not in error.

Third, Jones argues again that his relationship with his co-defendants was merely a buyer-seller relationship and not a conspiracy. (*See* Dkt. No. 236 at 16-18.) The crux of his position is that he only sold drugs to Nelson and James, the third co-defendant, and that the three of them were not otherwise involved in any kind of conspiracy or business together. (*Id*.) The Court fully addressed this contention in its prior Order, explicitly holding that "[h]ere, the Government presented overwhelming evidence that revealed the existence of a conspiracy amongst Jones, James, and Nelson and not merely buyer-seller relationships." (Dkt. No. 229 at 4.) The Order detailed the significant evidence in support of that finding, highlighting Nelson's testimony indicating that he and James sold and drugs and collected money for Jones, *id*. at 5, undermining Jones's renewed arguments here that Nelson was nothing more than a doorman. Jones's present motions do not point to any new evidence or change in the law that would cause the Court to reconsider its previous ruling, particularly as Nelson's testimony alone provided "copius evidence that Jones led and controlled a drug trafficking conspiracy."[5] (*Id*. at 6.) Furthermore, Jones's reliance on *United States v. Pulgar* is misplaced. 789 F.3d 807 (7th Cir. 2015). In that case, the Seventh Circuit held that the Government failed to set forth sufficient

---

[5] Based on the foregoing, the Court also rejects Jones's argument that it erred by not giving the buyer/seller jury instruction. Although Jones argues that the Court's decision was based on its own interpretation of the facts rather than the record, *see* Dkt. No. 236 at 26, as detailed above, the record clearly indicates the existence of a conspiracy rather than merely a buyer-seller relationship. In addition, as the Court explained during the final jury instruction conference, the facts at the close of evidence did not support giving the instruction:

> The one that's sitting out there is the buyer/seller instruction. And I -- I reviewed the transcripts last night. I just don't think I can say that the facts support it. If I had him just going and picking up or dropping off cash or drugs on a particular occasion, I would be able to do so. But with him being on the tape recordings and no one disputing -- I have not had any dispute whether that's him or not on the tape recordings, the evidence is of someone who is more engaged in a conspiracy in that he is directing. And some calls that come to mind are to show up at a particular time, to remove the instruments, you know, the cocaine base cooking instruments when the ambulance was coming for someone injured in the apartment. All of those show a much more active role in a conspiracy in making sure that whatever is happening at that site is actually taking place in an orderly fashion. He's directing others to do things that will benefit the conspiracy and conceal it. So I don't think it -- there's a good faith basis to offer the buyer/seller instruction, so I'm not going to do that.

(Dkt. No. 171 at 1028-29.) Jones fails to present any argument indicating that the Court's ruling was either unsupported by the facts or contrary to law, and is therefore rejected.

evidence to establish the existence of a conspiracy in part because Pulgar never expressed approval or disapproval of what his buyer eventually charged to resell the cocaine and the government failed to establish that Pulgar and his buyer "engaged in credit transactions during their business relationships." *Id*. at 814. Here, on the other hand, there was significant testimony regarding how James would store drugs for Jones at Jones's direction and issue drugs and collect payments from buyers after Jones told him who those buyers were. (*See* Dkt. No. 171 at 414.) Similarly, Nelson would also store cocaine, crack cocaine, and heroin in his apartment at Jones's behest, *id*. at 421-422, and would receive drugs from Jones and later work to pay them off. (*Id*. at 422-424 (Nelson testifying to transactions based on credit: "Oh. Well that varied, because we had a thing to where he told me that instead of me going and getting it from somewhere else, you know, since I had his stuff there, I could take some of that and I, in turn, owe him for that.").) Such facts distinguish *Pulgar* from this case. *See also United States v. Pereira*, 783 F.3d 700, 704 (7th Cir. 2015) (finding conspiracy where credit transactions were the norm.)

Finally, Jones groups together a number of assertions that are wholly unsupported by the record. First, Jones attempts to argue that many of the transactions that Nelson testified to were "conceptually and metrically distinct" from Jones's own actions and thus were acts taken outside of the conspiracy. (Dkt. No. 236 at 16.) This argument, as discussed above and at length in the Court's prior ruling, runs contrary to the evidence adduced at trial that indicated that the three defendants worked together to further the drug conspiracy that Jones led. For example, the fact that Jones did not permit Nelson to be involved in other criminal activity because Nelson was too valuable to the business clearly indicated that Nelson not only participated but also played a significant role in the defendants' conspiracy. (See Dkt. No. 171 at 522.) Second, Jones argues that the Government improperly tied "different schemes and agreements together with the word

'trafficked' to satisfy the conspiracy charge," *see* Dkt. No. 236 at 15, thereby coercing the jury to double count. Yet, Jones admits that the Court properly instructed the jury to consider each count separately, thus undermining any claim of prejudice. (*See id*.) As such, both arguments are rejected.

Accordingly, Jones's Motion for Post Trial Acquittal or New Trial related to Count I [236] is denied.

## II. Motion for Acquittal or New Trial Based Upon Prosecutorial Improprieties During Closing Arguments (Dkt. No. 238)

Jones presents seven separate arguments regarding alleged prosecutorial impropriety during closing argument. In evaluating a claim of prosecutorial misconduct, the Court first determines whether the remarks by the prosecutor were improper when viewed in isolation, and if found to be improper, then evaluates the remarks "'in the context of the entire record' [to] determine whether the defendant was deprived of a fair trial." *United States v. Common*, 818 F.3d 323, 331 (7th Cir. 2016), *cert. denied*, (U.S. Oct. 11, 2016) (citations omitted). "As a general matter, improper comments during closing arguments rarely rise to the level of reversible error, and considerable discretion is entrusted to the district court to supervise the arguments of counsel." *United States v. Amerson*, 185 F.3d 676, 685–86 (7th Cir. 1999); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.") (citations and internal quotations omitted). Finally, if Jones failed to object to the argument at trial, he must establish "not only that the remarks denied him a fair trial, but also that the outcome of the proceedings would have been different absent the remarks." *Common*, 818 F.3d at 331 (quoting *United States v. Bowman*, 353 F.3d 546, 550 (7th Cir. 2003)).

Specifically, Jones argues that the prosecutor (1) misstated and presented contradictory evidence and testimony; (2) attacked defense counsel; (3) vouched for the credibility of a witness; (4) expressed a personal belief about a witness's state of mind, veracity, or demeanor; (5) directed the jury to consider evidence outside of the record; (6) violated Jones's rights under the Confrontation Clause; and (7) violated Federal Rule of Evidence 404(b).

A.    **Misstating and Presenting Contradictory Evidence**

Jones contends that the prosecutor misstated and presented inconsistent evidence on a number of issues during closing arguments.

1.    January 23, 2012 drug distribution

Jones first argues that the Government misstated the evidence when it argued that James distributed crack cocaine to Carolyn Jones on January 23, 2012.  (Dkt. No. 238 at 7.)  Jones argues that because no one testified as to the kinds of drugs that James stored in his home, the Government's argument that James kept crack cocaine in the couch cushions was improper.  (*See* Dkt. No. 171 at 1068.)  As an initial point, the majority of the Government's argument on this issue during summation properly reviewed the evidence and requested the jury to make reasonable inferences based on that evidence.  As detailed in its Response, the Government relied on evidence from various wiretapped calls indicating that Jones instructed James "to take care of something for me," told James to go to the long couch "by the tv," clarified a drug amount by saying "two pairs of socks, right" and also stated where Carolyn Jones was going to come to pick up the drugs.  (Dkt. No. 255 at 18.)  Surveillance videos supported the wiretapped phone calls by showing Carolyn Jones entering and exiting James's home in the span of five minutes, providing support for an inference that a drug transaction had occurred.  (*See* Dkt. No. 171 at 413-16.)  Given that the jury had also heard evidence that James stored crack cocaine in

his couch, the Government's argument that the jury could infer that Carolyn Jones had received crack cocaine was proper argument. *See United States v. Collins*, 966 F.2d 1214, 1226 (7th Cir. 1992) ("the function of closing argument is to allow counsel for each side to put forth that side's best case. And in doing so, counsel is permitted to suggest factual inferences and to argue how the law applies to these facts.").

Although the majority of the Government's argument was therefore proper, the Government did err, as it recognizes in its own briefing, by stating that "Calvin Nelson told you, that James Jones and Antwan Jones kept that crack in the couch cushions for both the long couch and the short couch" despite the fact that Nelson did not testify to that fact. (*Id*. at 1068:18-21.) Although there is no dispute that the Government's statement was improper in isolation, Jones fails to provide any argument, and the Court cannot conceive of any, supporting a finding that the prosecutor's statement, when viewed in the context of the entire record, by itself deprived Jones of a fair trial. *See Common*, 818 F.3d at 331. This is particularly the case because there was a plethora of other evidence in the record supporting the jury's inference that James provided Carolyn Jones with crack cocaine during the January 23rd distribution. Given that Jones did not object to the argument at trial and that nothing in his briefing suggests that the outcome of the proceedings would have been different absent the remarks, this argument is rejected.

### 2. Call #325

Jones next argues that the Government's statements regarding Call #325 were improper. Call #325 was part of a series of calls on January 11, 2012 that related to Jones negotiating the delivery of cocaine. Based on a previous call, Jones had agreed to meet Rogelio Cervantes to deliver cocaine to him between 7 and 7:15 A.M. In Call #325, Jones called Nelson and indicated

to him that he should be at the garage where the delivery was to occur by 6:45 or 7 A.M. (*See* Dkt. No. 255.) Based on this conversation and the fact that the Government had conclusively established that Jones "had control over the garage and the Mercedes" in the garage, and that Jones stored drugs in the Mercedes, *see* Dkt. No. 229 at 13-14, the Government argued at closing that Jones wanted to get access to the Mercedes before Cervantes arrived at the garage. Jones contends that this argument was improper because there was no evidence that Jones actually accessed the Mercedes on January 11th. (*See* Dkt. No. 238 at 8.) However, the Government presented sufficient evidence of Jones's ownership of the Mercedes and his storing both drugs and a gun in the vehicle, *see* Dkt. No. 229 at 13, to argue that the jury could infer that Jones sought Nelson's assistance in getting into the garage to prepare for the transaction with Cervantes. *See Collins*, 966 F.2d at 1226.

        3.     Calls #494 and #495

Jones next contends that the Government erred by arguing that Jones was referring to $500 worth of cocaine during calls #494 and 495. The calls related to Jones instructing Nelson to tell David Osei-Bonsu, also known as Smooth, that Nelson would sell him one eight ball of cocaine and that Smooth would have to bring an additional $400 for the remaining four eight balls. (*See* Dkt. No. 171 at 479:12-17.) The Government argued that the call meant that Nelson, as Jones's behest, was going to sell five eight balls to David Osei-Bonsu and wanted $500 for the cocaine. Jones, in only two sentences, argues that the conversation was only about one eight ball. (*See* Dkt. No. 238 at 8.) However, based on the transcript and the fact that Nelson testified that Osei-Bonsu would typically get five eight balls every time he came to Nelson, *see* Dkt. No. 171 at 470:13-15, the Government's argument was reasonable. Even assuming that Jones is correct and the Government's argument was improper, Jones not only failed to object during

closing argument but also fails to provide to any argument, much less meaningful analysis, that the outcome of the proceedings would have been different if the Government had been barred from presenting that argument.

4.    Call #137

Jones next argues that the Government misstated the evidence when it stated that the "equipment" referred to in Call #137 was equipment that the defendant used to cook crack cocaine and other drugs.  Specifically, Jones asserts to the Government's use of the phrase "other drugs" was inappropriate because there was no evidence in Call #137 regarding other drugs. (*See* Dkt. No. 238 at 9.)  Nelson testified at trial that, based on the call, Jones requested him to go to James' apartment and gather tools he used to cook crack cocaine and a pyrex mixing bowl and hand mixer.  (*See* Dkt. No. 171 at 464:4-6.)  Nelson also testified that Jones requested "glasses," which he understood to mean the digital scale.  (*Id*. at 473 at 14-16.)  Based on that testimony, the Government's statements that such equipment was being kept in James's apartment and that the equipment was used to package drugs were reasonable.  Moreover, Jones fails to establish that the outcome of the trial would have been different even if the Government's closing argument did not include this otherwise reasonable inference.

5.    Argument regarding Chris from Peoria

Fifth, Jones argues that the Government misrepresented the amount of drugs that he sold to "Chris from Peoria."  (Dkt. No. 239 at 9-11.)  Jones argues that the Government misleadingly argued that Chris would purchase 154 grams worth of crack cocaine during each transaction. Jones misunderstands the Government's argument.  Based on Nelson's testimony that Chris bought crack cocaine from him five to ten times and that Chris would pay $4,400 for the drugs each time, the Government, using the fact that Jones would sell a eight ball which weighed 3.5

grams for $100, argued that the jury could infer that Chris was buying 154 grams of crack cocaine each time. As such, the Government was permissibly using facts – dividing the total amount of money that Chris would spend on each trip by the cost of an eight ball to determine how much crack cocaine Jones was selling to Chris – to suggest that the jury could infer that Jones had distributed in excess of the charged 280 grams of narcotics. *See Collins*, 966 F.2d at 1226.

Jones also argues that the Government's inference is flawed and contrary to Special Agent Anton's testimony that the cost of an eight ball was closer to $200 to $400. Jones was free to raise this issue during his own closing argument and certainly could have objected to the Government's argument during the trial itself. However, his failure to do so in addition to the fact that the Government permitted to request that the jury make reasonable inferences during closing argument doom this argument. *See Darden*, 477 U.S. at 181.

6. Open-Drug Case

Finally, Jones argues that the Government improperly stated on the record that Chris had an open drug and gun case even though Nelson testified that Chris only had an open gun case. During closing, the prosecutor stated that "Calvin Nelson told you that Chris had an open drug -- open gun case, and he said that the defendant was concerned that Chris would be cooperating with law enforcement, that he might be wearing a recording device, a tactic that you know from Special Agent Anton is used by law enforcement all the time." (*See* Dkt. No. 171 at 1071:25-1072:5.) As such, the transcript indicates that the prosecutor misspoke and corrected herself immediately, undermining any argument that the statement was improper if viewed in isolation and particularly if viewed against the entire record. *See Common*, 818 F.3d at 331; *see also, e.g., Idris v. Conway*, No. 12 C 6271, 2015 WL 5139403, at *4 n. 2 (N.D. Ill. Aug. 31, 2015), *appeal*

*dismissed* (Apr. 29, 2016) ("In the context of defense counsel's entire closing argument, the Court concludes that this statement was a mistake and harmless, particularly because defense counsel corrected her mistake…").

### B.        Alleged Attacks on Opposing Counsel

Jones next contends that the Government improperly attacked opposing counsel when it argued that the defense counsel's position that $8,200 for a quarter kilogram of cocaine was a "ridiculous" price to pay.  (*See* Dkt. No. 238 at 11.)  As an initial point, such a statement does not amount to prosecutorial misconduct, but simply a disagreement between the parties.  While prosecutors are barred from insulting or employing abusive rhetoric to denigrate defendants or their counsel, here, the prosecutor commented on the defense's position, not the defense counsel or the defendant himself.  Moreover, Jones does not present any argument that but for the Government's statement, the result of his trial would have been different.  Jones's argument is rejected.

### C.        Vouching for a Witness's Credibility and Expressing Personal Belief

Jones contends that the Government improperly vouched for a witness's credibility when it stated that Nelson's demeanor on the stand did not reflect someone who had been coached or rehearsed.  (*See* Dkt. No. 171 at 1180:20-22 ("So, Ladies and Gentlemen, his demeanor on the stand, you know, I think is not that of somebody who was coached or rehearsed."); *id*. at 1179:22-25 ("And he admitted that Pelon would come into the garage and meet with the defendant there. Right? That wasn't -- there's no scripted -- it wasn't scripted. He answered the questions truthfully.").)  "When assessing allegations of improper vouching in closing argument, we first consider the prosecutor's remarks in isolation. If the remarks are improper in the abstract, we then review them in the context of the entire record and ask whether they denied the

defendant a fair trial." *United States v. Alexander*, 163 F.3d 426, 429 (7th Cir. 1998). In conducting that review, the Court evaluates "several factors: (1) the nature and seriousness of the statement; (2) whether defense counsel invited it; (3) whether the district court sufficiently instructed the jury to disregard it; (4) whether defense counsel had the opportunity to respond to the improper statement; and (5) whether the weight of the evidence was against the defendant." *Id*.

When taken in context of the entire record, the prosecutor did nothing more than suggest a permissible inference when discussing the credibility of the witness – something that the jurors are permitted to consider – and it was done so only after the witness's credibility had been attacked. In applying the relevant factors to the Government's statement, it is clear that the statement did not amount to improper vouching as the Government only made the remarks in the context of describing the evidence; the prosecutor suggested the inference based on trial evidence to counter the defense's argument that Nelson had not been truthful and that his testimony was scripted and rehearsed; this Court instructed the jury multiple times that the jury was the sole finder of credibility and that closing arguments were not evidence; and the weight of the evidence was against Jones because of glut of corroborating evidence. *See Alexander*, 163 F.3d at 430; (*see* Dkt. No. 171 at 1055:23-2 (Court admonishing jury prior to closing arguments: "Remember what I told you at the beginning of trial. The arguments are not evidence, but they are an opportunity for the lawyers to argue to you what they believe the reasonable inferences that you can make from the evidence are.").) While it is true that the defendant did not have an opportunity to respond to the Government's argument, the other factors all weigh in favor of finding that the Government did not improperly vouch for Nelson's credibility. As such, the prosecutor's remarks did not rise to the level of misconduct. *See Darden*, 477 U.S. at 181.

15

**D.     Alleged Reliance of Evidence Not Introduced at Trial**

Next, Jones argues that the Government's statement that he could not keep his drug proceeds or his crack cocaine in a bank security deposit box amounted to improper argument because (1) there was no evidence in the record that he did keep either in a deposit box and (2) the rules for maintaining a deposit box were outside of the record and irrelevant to any issue in the case. (*See* Dkt. No. 238 at 16.) Yet, the Government did not make its statement for either of those purposes. Rather, the prosecutor was arguing, by analogy, that because Jones was not running a legitimate business, he could not keep his crack cocaine or proceeds in a legitimate place, such as a bank. (*See* Dkt. No. 255 at 25.) Whether or not a box holder would be required to "verify the contents of a safety deposit box" is wholly irrelevant. (Dkt. No. 238 at 16.) Moreover, Jones again fails to make any argument indicating that his trial was so infected by the prosecutor's statement that he was denied his right to a fair proceeding.

**E.     Alleged Confrontation Clause Violation**

Jones next asserts that his Sixth Amendment right to confrontation was violated when the Government introduced wire calls between non-testifying witnesses and subsequently offered those statements for the truth of the matter asserted. (*See* Dkt. No. 238 at 17.) He also argues that the Government erred by improperly interpreting "the calls for the jury during closing arguments" rather than allowing the jury to make its own determination. (*Id*.) Jones's first argument is denied because the Government was permitted to use coconspirator statements for any purpose once those calls had been admitted pursuant to Federal Rule of Evidence 801(d)(2)(E). *See United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991). Here, the Government, consistent with *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), filed a motion proffering the coconspirator statements that it intended to use during trial, *see* Dkt. No.

87, and the Court subsequently denied Jones's challenges to the statements without prejudice. Jones's failure to object to any of those statements during trial belies his argument now.

Jones also argues that the Government violated his rights when it interpreted the calls for the jury during closing arguments, thus robbing the defense of the ability to "cross-examine and/or properly rebut the only interpretations offered describing the contents of the previously displayed calls." (Dkt. No. 238 at 17.) Although Jones asserts that the prosecutor's argument and interpretation resulted in a violation of his due process rights, as discussed above, the Government did nothing more than argue that the jury could make reasonable inferences based upon the evidence introduced at trial. Such argument is permissible and Jones's contention is denied. *See Andreas*, 216 F.3d at 671.

F.      **Alleged Rule 404(b) Violation**

Finally, Jones seems to argue that the Government erred by introducing improper character evidence in violation of Rule 404(b) when it required that the parties' stipulation include that Jones traded sexual favors with Ashley in exchange for cocaine. (Dkt. No. 238 at 24.) Although Jones's argument is unclear (and the portion of the transcript that he cites to does not shed any light on his position), there does not appear to have been any reference to "sexual favors" during trial. In any event, Jones again fails to present any meaningful argument that he was prejudiced by the inclusion of that phrasing in the stipulation and certainly has not shown that but for that language, the outcome of the trial would have been different.

Accordingly, Jones's Motion for Acquittal or New Trial Based Upon Prosecutorial Improprieties During Closing Arguments [238] is denied.

III.    **Motion for Acquittal or New Trial Based Upon the Use of Nebulous Eye-Balling (Dkt. No. 239)**

In his third post-trial motion, Jones presents a number of arguments that all relate to attacking Nelson's credibility and testimony. Although he separates his contentions into seven separate arguments, the crux of his position is that he is entitled to acquittal or a new trial because "the evidence presented in the form of the testimony of the witness Calvin Nelson was insufficient to convict." (*See* Dkt. No. 238 at 2-3.)

Given that the Court has fully explored and previously held (both in its prior Order and above) that Nelson's testimony was reliable and detailed, Jones must argue that there has been a significant change in the law or the facts or that the court misunderstood his arguments at trial. *See Ligas*, 549 F.3d at 501. None of Jones's arguments meet that high burden. For example, Jones argues that much of Nelson's testimony is unreliable because it is based on Nelson's "nebulous eye-balling" to determine the amount of drugs sold during various transactions or that the Court should have dismissed Nelson's testimony because of his history of drug use. (*See* Dkt. No. 240 at 5-17.) Not only does Jones himself state that all of these issues were presented to the jury, clearly indicating that his arguments are not based on new facts and that the jury already had an opportunity to consider any inconsistencies, but the Court has already held that Nelson's testimony "was extremely detailed, his memory was sharp, and his demeanor was calm throughout his time on the witness stand." (Dkt. No. 229 at 6; Dkt. No. 255 at 7.) Jones additionally expresses "disappointment and disbelief in the jury's verdict" because of the alleged inconsistencies in Nelson's testimony and the fact that the Government itself argued that Jones did not trust Nelson. (*See* Dkt. No. 239 at 21 ("If the government knows that the defendant does not trust the witness, then how much credence should the Court give to Nelson's testimony….").) However, and as explained above, the jury weighed the evidence and Nelson's

credibility and found the evidence sufficient to convict Jones. This Court may not "second-guess the jury's assessment of the evidence." *Rollins*, 544 F.3d at 835.

As such, because Jones's contentions are effectively rehashed versions of arguments that the Court has already rejected, his Motion for Acquittal or New Trial Based Upon the Use of Nebulous Eye-Balling [239] is denied.

## IV.   Motion for Acquittal or New Trial Based Upon Insufficiency of Evidence for Counts 10 and 11 (Dkt. No. 240)

Jones next contends that he is entitled to acquittal or a new trial because the evidence adduced at trial was insufficient to sustain a conviction on Counts 10 and 11. (*See* Dkt. No. 240.) Given that the Court has already determined that there was sufficient evidence in the record to sustain convictions under both Counts, *see* Dkt. No. 229 at 11-15, the Court construes Jones's motion as a motion for reconsideration. Accordingly, Jones is entitled to relief only if there "has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *Ligas*, 549 F.3d at 501.

### A.   Count 10

In Count 10 of the Superseding Indictment, the Government charged (and the jury convicted) Jones with attempting to obtain 500 grams or more of cocaine on April 15, 2012. The facts underlying the conviction were that Jones unsuccessfully attempted to buy cocaine from Javier Diaz. After pulling Diaz over, law enforcement subsequently found two bundles of cocaine, amounting to a total of 1.25 kilograms, in a secret hidden compartment of Diaz's car. Based on the evidence in the record from wire-tapped calls, the Government argued that Jones intended to purchase one kilogram of cocaine for $28,200 from Diaz. Jones now attacks his

conviction by arguing that the Government misrepresented the significance of the "number 82." (*See* Dkt. No. 240 at 9-10.)

As an initial point, Jones fails to allege, much less analyze or establish, that there has been a significant change in law or fact, that the Court misunderstood his prior argument, or that the Court overreached in previously finding that there was sufficient evidence underlying his conviction. As such, his motion to reconsider is denied on this ground alone. In fact, Jones's attorney raised this very concern during closing argument to the jury, *see* Dkt. No. 117 at 1146-47, belying any contention that these arguments were not presented to the jury. Nevertheless, a review of his arguments reveals that they are without merit. Jones argues that the Government's position that "eighty two for the ticket" meant that Jones was attempting to buy one kilogram of cocaine for $28,200 was faulty because "no one testified to the truth of the matter relating to [the wire-tapped] calls." (*See* Dkt. No. 240 at 6, 9.) However, as the Government laid out in its Response, the Government's interpretation of the call was based on inferences that were supported by the record. (*See* Dkt. No. 255 at 30 (Government noting that its argument was based on three pieces of evidence: "first, the drug dealers' habit of abbreviating monetary amounts by leaving off digits, as testified to by Nelson and SA Anton, second, the fact that $8,200 was too high a price to pay for a quarter kilogram of cocaine, and third, the fact that defendant was asking his supplier that if they got the whole thing, if the price might be reduced.").) Given that the Court has already found that there was sufficient evidence for the jury to convict and that prosecutors are permitted to argue reasonable inferences to jury during closing argument, *see Collins*, 966 F.2d at 1226, Jones's present contentions are insufficient under the reconsideration standard.

### B. Count 11

In Count 11, the Government charged Jones under Section 924(c)[6] after law enforcement recovered a handgun from Jones's Mercedes in his garage at 607 East 60th Street on June 6, 2012. Jones now argues that his conviction cannot stand because "[t]he government presented no evidence hinting that the defendant used a weapon in furtherance of a drug crime." (Dkt. No. 240 at 11.) Jones presented, and the Court rejected, this exact argument previously. (*See* Dkt. No. 229 at 13.) Although Jones now argues that the Government failed to offer evidence regarding various issues, *see* Dkt. No. 240 at 14-15, the Court already analyzed, in significant detail, all the evidence supporting the conviction under Section 924(c). (*See* Dkt. No. 229 at 13-15 (holding that the Government satisfied both prongs of the Section 924(c) analysis beyond a reasonable doubt).) Jones fails to present any meaningful or new contention in his current motion to undermine the Court's prior finding.

Jones's Motion for Acquittal or New Trial Based Upon Insufficiency of Evidence for Counts 10 and 11 [240] is denied.

### V. Motion to Vacate Convictions due to Deceptively Hidden Exculpatory Evidence that Warrants Suppression of the Wiretap Evidence (Dkt. No. 240)

Jones additionally contends that his convictions should be overturned or that the wiretaps used in the case should have been suppressed based on newly discovered information from wiretap applications and affidavits from allegedly related cases, including specifically *United States v. Hoskins*, 13 CR 772. Although his fifty-page motion is difficult to follow, Jones

---

[6] To sustain a conviction under Section 924(c), the Government had to prove beyond a reasonable doubt that Jones (1) possessed a firearm and that (2) his possession of the firearm was in furtherance of a drug offense. *See United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005).

appears to argue that the Government (1) illegally joined or latched this investigation to the Hoskins investigations and (2) failed to comply with 18 U.S.C. § 2510 *et seq*.[7] (Dkt. No. 243.)

As a preliminary point and to the extent that Jones argues again that the allegedly "new evidence" entitles him to a new trial, that argument is rejected. The Court has already denied that argument because Jones failed "to establish that the alleged new evidence is material." (*See* Dkt. No. 229 at 16); *see also United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013) (third prong of test requiring that the newly discovered evidence be material). Although Jones now argues that he would have motioned the Court for additional discovery "to challenge the redacted fusing" of the cases, *see* Dkt. No. 243 at 5, the Court unequivocally found that "there is simply no indication whatsoever that the Government failed to provide Jones with relevant evidence from any of the other criminal investigations caused by the common wiretap." (Dkt. No. 229 at 17.) Jones presents nothing in his current motion to disturb that finding.

Nevertheless, the Court considers each of Jones's arguments in turn. First, Jones argues that the Government illegally joined or latched this investigation to the Hoskins investigations through the use of the wiretapped calls from that case. (*See* Dkt. No. 243 at 16.) However, given that Jones was charged with and convicted of crimes related only to his own drug trafficking activities and was not prosecuted in the other case, his position is unavailing. Even more, Jones fails to cite to any case law, and this Court has not found any, indicating that the Government was prohibited from expanding its investigation to Jones once the wiretapped calls in the other case revealed his criminal activities. *See also, e.g., United States v. Givens*, No. 12-CR-0421-1, 2016 WL 3766337, at *3 (N.D. Ill. July 8, 2016) ("At times, Givens seems be making a broad argument that the government simply was not permitted to expand its

---

[7] Jones also seems to contend that the Government violated Federal Rules of Criminal Procedure 3 and 4. However, neither of those Rules, which address criminal complaints and arrest warrants, are applicable to wiretap applications.

investigation from the members of the Imperial Insane Vice Lords to Williams, a suspected Traveling Vice Lord, and his suspected drug supplier, Givens….But Givens offers no authority (and the Court finds none) to support the proposition that the government may not expand an investigation in this way.").

Second, Jones argues that the Government violated 18 U.S.C. § 2518(1)(e) through the use of "deceptive" or "misleading" wiretap applications.  (Dkt. No. 243 at 17-26.)  Jones contends that because the applications listed violators from the Hoskins, Givens, and Jones' investigations together, the Chief Judge may have "mistakenly" thought that the violators listed were all part of one group of conspirators involved in the same acts of misconduct.  (*Id*. at 19.) However, Jones ignores the fact that the applications were accompanied by affidavits that laid out the probable cause in detail.  Moreover, the *Givens* court rejected this exact argument after finding that the affidavits underlying the applications established probable cause.  *See, e.g., Givens*, 2016 WL 3766337, at *3-*4 (holding that while the "application is not a model of clarity," the "probable cause section of the affidavit supporting the application" established probable cause).  Accordingly, Jones's Motion to Vacate Convictions due to Deceptively Hidden Exculpatory Evidence that Warrants Suppression of the Wiretap Evidence [240] is denied.

Finally, Jones's Motion for Hearing Regarding Sealing Order Application [264] is similarly denied.  Not only was that motion filed after the Court imposed deadlines for post-trial motions and without leave of Court, *see* Dkt. No. 246, but it again argues that wiretap applications included false and misleading statements.  (*See* Dkt. No. 264 at 2.)  However, as discussed above and in the Court's prior ruling, the Government timely disclosed the applications to the defense and the wiretap applications do not include any exculpatory evidence

such that a hearing is necessary. (*See also* Dkt. No. 266 at 4 (Government Response noting that this identical claim has been rejected in the *Givens* case).) As such, the motion is denied.

## CONCLUSION

For the reasons set forth above, Jones's post-trial motions [236, 238, 239, 240, 243, 264] are denied. Jones has now had two full rounds of post-trial briefing and therefore no further post-trial motions for acquittal or new trial will be considered. Jones is reminded that any sentencing position paper is due on or before November 30, 2016.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 11/18/2016